UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER ALLEN SANCHEZ,<br><br>    Plaintiffs,<br><br>v.<br><br>THE COUNTY OF TWIN FALLS;<br>OFFICER DEPUTY JOSHUA<br>GONZALEZ, in his official capacity; and<br>CORIZON HEALTH INC.,<br><br>    Defendants. | Case No. 1:20-cv-00258-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendants Twin Falls County ("Twin Falls") and Deputy Joshua Gonzalez's Motion to Dismiss. Dkt. 20. On February 16, 2021, the Court held a hearing on the motion. Upon review, and for the reasons set forth below, the Court GRANTS the motion.[1]

## II. BACKGROUND

In May 2020, Plaintiff Christopher Allen Sanchez filed this lawsuit alleging that his Fourth Amendment rights had been violated. Dkt. 1. The allegations stem from an incident wherein a law enforcement officer discharged a firearm in an inmate transfer vehicle in June 2018. *Id*. Months later, Sanchez filed an Amended Complaint, which included the

---

[1] The hearing was initially scheduled to include Corizon Health Inc.'s Motion to Dismiss as well. Dkt. 38. Therein, Corizon sought dismissal of the other claim involved in this case, which was solely against Corizon. However, the Court granted Corizon's unopposed oral Motion to Vacate the Hearing as to its Motion to Dismiss from the bench. The Court directed Corizon to file a notice of renewal, if Corizon wished to assert its motion at a later juncture. Accordingly, this Order includes only the facts pertinent to Twin Falls' motion and the claim against it.

same claim. Dkt. 17. In particular, Sanchez alleges that Twin Falls violated his "Fourth Amendment rights by failing to provide appropriate training and policies for using and handling firearms for law enforcement which led to Deputy Gonzalez's excessive force when he recklessly fired a shotgun" at Sanchez. *Id.* at 2.

Sanchez is currently in custody in one of the Idaho Department of Correction's ("IDOC") facilities. On the day of the discharged firearm, Sanchez says that he and Deputy Gonzalez arrived at the prison facility, and he witnessed Deputy Gonzalez enter a guard shack and dry fire his side arm. *Id.* at 4. Sanchez also alleges that while he was bound in restraints in the vehicle, Deputy Gonzalez attempted unsuccessfully to retrieve a shotgun from a security locking device in the front of the vehicle. Deputy Gonzalez purportedly spent fifteen to twenty minutes attempting to remove the shotgun to no avail. He then asked his Sergeant for instruction. After Deputy Gonzalez was able to unlock the security device, he then "rocked the shotgun forward, pointing the end of the barrel at himself, and back pointing the barrel towards . . . Sanchez, when the shotgun fired within the law enforcement vehicle where Sanchez was handcuffed and restrained." *Id.* ¶ 12.

As for damages, Sanchez alleges that the gunshot led to "expenses and likely future costs for medical care for his permanent hearing loss" for which he "requires hearing aids for both ears, damage to his eyesight requiring eye care and prescriptive glasses, headaches, ringing in his ears," sleeplessness, and severe trauma. *Id.* ¶ 26.

On August 14, 2020, Twin Falls and Deputy Gonzalez filed their Motion to Dismiss. Dkt. 20. In it, they first argue that Deputy Gonzalez is a redundant defendant as a matter of law because he was sued in his official capacity. They then contend that Sanchez has

MEMORANDUM DECISION AND ORDER - 2

failed to state a *Monell* claim against Twin Falls. Sanchez responded and opposed Twin Falls' motion, but he provided a notice of non-opposition to dismissing Deputy Gonzalez. Dkt. 48, at 2. At the hearing, Sanchez also conceded that the Court should dismiss Deputy Gonzalez. Accordingly, the Court dismissed Deputy Gonzalez in a ruling from the bench. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, . . . local government units can be sued directly for damages and injunctive or declaratory relief."); *Hillblom v. Cty. of Fresno*, 539 F. Supp. 2d 1192, 1202 (E.D. Cal. 2008) (noting that "the officer is a redundant defendant and may be dismissed").

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). In deciding whether to grant a motion to dismiss, the court must accept as true all well-pled factual allegations made in the pleading under attack. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

# IV. ANALYSIS

To bring a § 1983 claim against a governmental entity or private entity performing a governmental function, a plaintiff must allege: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Such a claim is considered a *Monell* claim. *See generally Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

In a *Monell* claim, a governmental entity may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Rather, a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit, because *Monell* liability rests on the actions of the entity, and not the actions of its employees. *See Brown*, 520 U.S. at 403; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 690–91. A plaintiff must therefore show "deliberate action attributable to the municipality [that] directly caused a deprivation of federal rights." *Brown*, 520 U.S. at 415 (emphasis removed). "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." *Id.*

Here, Sanchez asserts a *Monell* claim against Twin Falls for an alleged use of excessive force due to the discharge of the shotgun. Twin Falls moves to dismiss the claim

against it for failure to state a claim. The Court agrees. In short, essential details are missing from Sanchez's claim for it to survive. Nevertheless, the Court will allow Sanchez leave to amend his Amended Complaint.

In particular, Twin Falls contends that the *Monell* claim for excessive force against it must be dismissed for failure to state a claim. To prevail on such a *Monell* claim, a plaintiff must establish that (1) an officer's actions amounted to an unconstitutional application of excessive force; and (2) the governmental entity's policy caused the constitutional wrong. *Lowry v. City of San Diego*, 858 F.3d 1248, 1255 (9th Cir. 2017). Sanchez has alleged sufficient facts to satisfy the first element but has not done the same on the second element.

Sanchez has established a plausible unconstitutional application of excessive force based on the alleged facts, which could lead a reasonable juror to conclude that Deputy Gonzalez's actions preceding the discharge of the shotgun were unreasonable. Although the allegations seem to show that the discharge of the shotgun was accidental, that does not end the Fourth Amendment inquiry where, as is true here, the individual is already seized. Generally, law enforcement conduct only implicates the Fourth Amendment when it involves "means intentionally applied." *Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989); *Baskin v. City of Houston, Miss.*, 378 F. App'x 417, 418 (5th Cir. 2010) (dismissing a claim of excessive force where an officer accidentally discharged his weapon and killed a suspect during a scuffle); *Culosi v. Bullock*, 596 F.3d 195, 200 (4th Cir. 2010) (noting that the viability of the Fourth Amendment excessive force claim turned on the question of whether the discharge of the officer's firearm was an intentional act or accidental); *Dodd v. City of*

*Norwich*, 827 F.2d 1, 7–8 (2d Cir. 1987) (explaining that liability under the Fourth Amendment does not extend to accidents or negligence). This is because "[t]he Fourth Amendment addresses misuse of power, not the accidental effects of otherwise lawful government conduct." *Id.* at 596 (cleaned up).

For example, if the police were to set up a roadblock with an 18-wheel tractor trailer across both lanes of a two-lane highway to stop a police chase, that would be by means intentionally applied. *Id.* at 594, 599. Conversely, "if a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely a tort has occurred but not a violation of the Fourth Amendment" due to the accidental nature of the event. *Id.* at 596. As a final example, if a police car were to accidentally roll over a suspect, "the officers' negligent conduct causing the accident [would] not implicate the Fourth Amendment." *See Dimmig v. Cty. of Pima*, 569 F. App'x 540, 541 (9th Cir. 2014).

In this case, Sanchez's allegations show that the discharge of the firearm was accidental, not intentional. Sanchez's allegations show a struggle to remove the shotgun from the locked device of the inmate transport vehicle. They further demonstrate that as Deputy Gonzalez rocked the shogun out of the security device, the shotgun fired. Tellingly, during this effort, Sanchez even alleges that Deputy Gonzalez pointed the shotgun at himself while rocking the device. Nowhere in the allegations does the Court find an implication, much less a stated allegation, that Deputy Gonzalez intentionally discharged the shotgun. Such a finding would usually cut off an excessive force claim, as Twin Falls suggests.

The Fourth Amendment inquiry is different, however, where a person has been seized already, which Sanchez plainly was as he sat in the inmate transfer vehicle. In this context, whether an accidental harm constitutes excessive force depends on whether the officer's actions leading up to the accident were objectively reasonable. *Torres v. City of Madera*, 524 F.3d 1053 (9th Cir. 2008) (holding that officer's mistaken shooting of the individual in handcuffs was "governed by Fourth Amendment reasonableness analysis"); *Stamps v. Town of Framingham*, 813 F.3d 27, 38–39 (1st Cir. 2016) (collecting cases). Here, those same allegations outlined above demonstrate that a reasonable juror could conclude that Deputy Gonzalez's risky actions in removing the shotgun while alternating between pointing it at himself and Sanchez as he tried to pry it out of the security device were objectively unreasonable. Therefore, Sanchez has pleaded sufficient facts to state a plausible use of excessive force in this case.

Nevertheless, Sanchez has failed to properly plead that Twin Falls has a policy or custom amounting to a deliberate indifference in training its law enforcement officers that lead to Gonzalez's actions. A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S.

808, 822–23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*.")).

The "failure to train . . . employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (cleaned up). The deliberate indifference standard for municipalities is an objective standard. *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1076 (9th Cir. 2016). This standard is satisfied only when "a § 1983 plaintiff can establish that the facts available to . . . policymakers put them on actual or constructive notice that the particular omission [or act] is substantially certain to result in the violation of the constitutional rights of their citizens." *Id.* (cleaned up). That is, to maintain a failure to train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference and that the governmental entity had actual or constructive notice of those violations. *Connick*, 563 U.S. at 72.

Here, in support of his claim, Sanchez's generic and conclusory allegations are insufficient to meet the proper pleading standard. Sanchez includes the following relevant pleadings:

> 34. Twin Falls County has a policy or custom that inadequately trains officers on handling and using firearms.

> 35. Twin Falls County's policy or custom of inadequate train[ing of] their officers amounts to deliberate indifference to Mr. Sanchez's Fourth Amendment constitutional right where Twin Falls County's continued adherence to its approach to firearms training that they know or should know, has failed to prevent tortious conduct by its employees.

36. Twin Falls County's policy or custom of inadequate training was the moving force behind the Fourth Amendment violation that Mr. Sanchez suffered.

Dkt. 17, at 7. These allegations are essentially a copy and paste of the *Monell* elements. They notably do not include any details regarding a specific policy or custom that Twin Falls had that caused the incident. They do not include any details as to the inadequacies of a training program. The allegations do not even mention what actual firearms training Twin Falls provides to its personnel in general. They also do not involve any other similar incidents or outline that any other Twin Falls deputy was inadequately trained in the use of firearms. Nor do they show any pattern of constitutional violations or dangerous incidents that resulted from Twin Falls' firearms training.

The allegations do not provide any specifics about knowledge any policymaker had with its firearms training, let alone knowledge that the training was deficient or that it would cause harm such as that purportedly experienced in this case. And the allegations do not state that Twin Falls had this knowledge and then consciously or deliberately disregarded the potential risk by allowing any deficiency in its training to continue. These shortcomings doom Sanchez's claim. *See Iqbal*, 556 U.S. at 678–79; *Ingram v. Mouser*, No. 1:19-cv-00308-DCN, 2021 WL 329559 (D. Idaho Feb. 1, 2021) ("If complaints were able to survive on a recitation of the elements of a *Monell* claim alone, like the ones here, the Rule 12(b)(6) standard would become a nullity.").[2]

When Sanchez's conclusory statements regarding a policy of inadequate training

---

[2] In fairness, the Court's Order from *Ingram* was issued after this case was fully briefed, but the Court includes this citation because the dispute there dealt with very similar issues to the ones here. *Id.* at *4–5.

are set aside, all that is left is his single isolated incident. From this one event, he appears to extrapolate the idea that Twin Falls has a policy of inadequate firearms training. Dkt. 48, at 8–9. But a single incident is insufficient to prove a policy or custom of inadequate training, notice, or a deliberate indifference on the part of Twin Falls. *See Connick*, 563 U.S. at 72 ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." (cleaned up)); *Harris*, 489 U.S. at 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").[3] Accordingly, the Court cannot allow Sanchez's *Monell* claim against Twin Falls to move forward due to the dearth of more detailed allegations. Twin Falls' motion is granted on this ground.

The Court nonetheless concludes that leave to amend is appropriate in this case. Dismissal without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris*, 573 F.3d at 737. Leave to amend pleadings shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2).

---

[3] Sanchez argues that the *Harris* Court recognized a firearm exception to this general rule. Sanchez claims that, because a firearm is involved, his single incident can show a deliberate indifference. Sanchez's argument misreads *Harris*. There, the Supreme Court's point with firearms was that, in certain circumstances, a complete lack of a training program can constitute deliberate indifference instead of an official policy of inadequate training. *Harris*, 489 U.S. at 390 & n.10. For example, where police officers are armed with firearms, it is so obvious that they require training that not having a training program altogether can be deliberately indifferent. *Id.* The Court did not state that one isolated incident with a firearm represents an exception to the general precepts of the deliberate indifference standard. Sanchez does not allege that Twin Falls lacks a firearm training program altogether. Nor does he allege adequate facts that show Twin Falls was deliberately indifferent to training. All Sanchez alleges is that this isolated incident occurred. His argument is, therefore, unpersuasive.

MEMORANDUM DECISION AND ORDER - 10

Courts apply Rule 15 with extreme liberality. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted).

Here, Sanchez has only once amended his pleading, has not caused undue delay, and has not shown any bad faith. Moreover, he might be able to correct the deficiencies identified in this Order. *See United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). Additionally, Twin Falls conceded at the hearing that leave to amend would be appropriate at this time. Therefore, the Court will allow Sanchez to amend his Amended Complaint, if he so wishes.

## V. ORDER

The Court HEREBY ORDERS:

1.    Defendant Deputy Joshua Gonzalez is dismissed as a defendant from this case.

2.    Defendant Twin Falls County's Motion to Dismiss (Dkt. 20) is **GRANTED**.

3.    Plaintiff may file a second amended complaint. If he chooses to amend, he must file his second amended complaint within 30 days of this Order. Otherwise, this case will be dismissed with prejudice and without further notice.

DATED: March 4, 2021

David C. Nye
Chief U.S. District Court Judge